COUNTY PLAINS CORPORATION, Respondent, *v.* NOSBAND CORPORATION, Appellant, Impleaded with FRIGIDAIRE SALES CORPORATION and Others, Defendants.

Second Department, March 11, 1932.

*Harry G. Anderson* [*Louis J. Moss* with him on the brief], for the appellant.

*George A. Lewis* [*H. Herbert Romanoff* with him on the brief], for the respondent.

DAVIS, J. The action is to foreclose a mortgage, with demand for deficiency judgment. The appellant, Nosband Corporation, interposed an answer which contained three counterclaims. On motion all were struck out as improper and insufficient in law. We are here concerned only with the sufficiency of what is termed the " third counterclaim." The particular question presented is, whether this counterclaim is " a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action." (Civ. Prac. Act, § 266.)

Accepting as true on this appeal the facts stated in the somewhat prolix and involved language of the counterclaim, we may state as briefly as possible the relations existing between the parties. On July 23, 1930, the Nosband Corporation purchased four lots in White Plains from plaintiff. Part of the purchase price of $140,000 was paid in cash, another part by taking the property subject to an existing mortgage, and the remaining part by giving a purchase-money mortgage of $105,000 — which is the mortgage being foreclosed. The mortgage provided that a large apartment house should be erected by the mortgagor on the premises to be completed by June 1, 1931. We will henceforth designate the Nosband Corporation as " the owner."

A provision in the mortgage was that plaintiff would subordinate the lien of its mortgage to any building loan and first mortgage made by the Lawyers Mortgage Company not exceeding $385,000, and to all the advances made thereunder as the building progressed in construction. The purpose is obvious, to wit, that the owner should be able to erect a valuable building on the two vacant lots, thereby greatly enhancing their value and giving substance to the plaintiff's mortgage.

When the building reached a certain stage of construction known as "enclosure," and the owner became entitled to receive the first payment under the building loan mortgage, $35,000 was to be paid to plaintiff to be applied on its mortgage. Evidently the loan and the terms had been prearranged between the plaintiff and the Lawyers Mortgage Company. When the building reached the stage agreed upon, the owner received payment of the sum due and paid $35,000 in reduction of plaintiff's mortgage. Other payments to the owner were advanced on the building loan mortgage until but $34,000 remained to be paid. It was further provided in the mortgage that upon completion of the building the plaintiff would release the lien on the other two vacant lots. So we have one united plan consisting of a sale of the property, the construction of the apartment building, a building loan mortgage, a subordinate purchase-money mortgage with provision for payment thereon, and the release of two lots from the lien of the mortgage.

It is alleged in the counterclaim that the building had reached a state of practical completion, with some minor and unsubstantial items yet to be supplied; that the owner had received proper certificates of occupancy; and that it was entitled to receive the final payment on the building loan mortgage. At this stage the plaintiff notified the Lawyers Mortgage Company that the building was not complete and that the latter should not make the final payment, "under threat of penalty and damage"— probably as affecting the subordination agreement. Plaintiff failed to release the lots as it had agreed. The advance was not made and plaintiff began this suit for foreclosure, as the owner claims, in defiance of the terms of the agreement, and all for the purpose of putting it in a disadvantageous position and to permit plaintiff to recover title to the property, improved and made valuable by the owner.

The counterclaim, therefore, includes a wrongful interference by plaintiff with the contract between the owner and the Lawyers Mortgage Company, and a breach of the agreement to release the two lots from the lien of the mortgage. Assuming the building was in fact substantially completed, no discussion is required concerning the latter claim. As to the interference with the contract,

if it was intentional and not justified, it was " a wrongful act without legal or social justification." (*Campbell* v. *Gates*, 236 N. Y. 457, 460.) The remedy was not alone against the loaner, but there was joint and several liability. (*Hornstein* v. *Podwitz*, 254 N. Y. 443.) If otherwise good, the counterclaim is not invalid because the damages are unliquidated (*Peterson* v. *Reid*, 76 N. J. Eq. 377; *Keon* v. *Saxton & Co.*, 257 N. Y. 412; reargument denied, 258 id. 578); nor because it sets up a claim in the nature of a tort. (*France & C. S. S. Corp.* v. *Berwind-White C. M. Co.*, 229 N. Y. 89; Wiltsie Mort. Forec. [4th ed.] §§ 513, 514; *Sherwood* v. *Fincke Co., Inc.*, 196 App. Div. 97; *Fout* v. *Wolfe*, 231 id. 11.)

Did these matters, without doubt constituting causes of action, arise " out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim," or were they " connected with the subject of the action? " Similar words are used in section 258, subdivision 9, of the Civil Practice Act, concerning the joinder of causes of action.

The question is always troublesome. Early it was said concerning such provisions: " Its language is, I think, well chosen for the purpose intended, because it is so obscure and so general as to justify the interpretations which shall be found most convenient and best calculated to promote the ends of justice." (*New York & New Haven R. R. Co.* v. *Schuyler*, 17 N. Y. 592, 604.) And later: " This language is very general and very indefinite. * * * I am satisfied that it is impracticable to lay down a general rule which will serve as an accurate guide for future cases. It is safer for courts to pass upon the question as each case is presented." (*Wiles* v. *Suydam*, 64 N. Y. 173, 177.)

The foundation of the plaintiff's action is the mortgage. That instrument, as we have said, provided for the construction of the apartment building, the loan, the payments, the release of the two lots — in short, for the relations of the parties from the time the sale was made until the building was completed. It represented a series of transactions, all dependent on the giving of the mortgage and the terms thereof. The subject of the action is the mortgage, its provisions and the duties imposed upon both parties. The owner was to build and pay; the plaintiff was to subordinate its mortgage and release part of the property subject to its lien. We will assume that the owner was hindered in the full completion of the building, and the payment of its obligations, because of the unlawful interference with its loan contract; and was rendered unable to obtain additional funds for the reason that its two lots were not available for sale or mortgage. By these means it was prevented from meeting its obligations on the mortgage or other-

wise, and there followed the foreclosure as a result. On this state of facts the owner sustained damage. Must it seek the remedy in a separate action?

In an action where the question of the joinder of causes of action in a complaint under the language of section 258, subdivision 9, of the Civil Practice Act was being considered (*Sherlock* v. *Manwaren*, 208 App. Div. 538), CROUCH, J., says (p. 540) the language " must now be construed in the light of the several related provisions of that act, which, taken together, constitute a complete and flexible system of joinder of parties and causes of action, the purpose of which is the prompt dispatch of litigated business and the limits of which should be only the convenience of trial without prejudice to substantial rights."

We apply the principle to this case. The roots of the mortgage loan contract and the agreement to release were in the plaintiff's mortgage. We think there was relation to the contract, transaction and subject-matter in the claims of defendant. Authorities are of little value. The question must be determined as each case is presented; and the determination is essentially somewhat dogmatic, with the purpose to promote the ends of justice and facilitate the dispatch of litigated business. We do not seek to lay down a general rule. There is occasional discussion of the subject in an attempt to establish a somewhat general doctrine. (*France & C. S. S. Corp.* v. *Berwind-White C. M. Co., supra*, p. 94.)

We are dealing only with a question of pleading and indicate no opinion of the merits. The parties must depend on the proof they may present on the trial. We hold that one action must suffice for the determination of their rights and that defendant need not bring a separate action to obtain the relief it seeks.

The order in so far as appealed from should be reversed on the law, with ten dollars costs and disbursements, and the motion in respect to the third counterclaim be denied.

LAZANSKY, P. J., YOUNG, CARSWELL and TOMPKINS, JJ., concur.

Order as resettled dismissing counterclaims, in so far as appealed from, reversed on the law, with ten dollars costs and disbursements, and plaintiff's motion to dismiss the third counterclaim denied, with ten dollars costs.